IDIL ISSAK,

      *Plaintiff,*

v.

  No. 3:25-cv-00238-KAC-JEM

RANDY BOYD, President of the
University of Tennessee
System, in his Official Capacity, *et al.,*

      *Defendants.*

## MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

Plaintiff Idil Issak, by and through undersigned counsel, hereby moves for the entry of an Order granting her leave to file a Second Amended Complaint as required by Fed. R. Civ. P. 15(a)(2), and E.D. Tenn. L.R. 15.1. Pursuant to E.D. Tenn. L.R. 15.1, Plaintiff's Second Amended Complaint is attached. Plaintiff seeks leave to amend her complaint to reflect recent factual developments and the related effect on requested relief, as further detailed below.

## BACKGROUND

On June 2, 2025, Plaintiff Idil Issak, then a PhD student in anthropology at the University of Tennessee-Knoxville ("University"), filed suit against the University, the Institutional Review Board ("IRB") operating out of the University, and several other Defendants, alleging the Defendants' requirement that she obtain approval from the IRB prior to conducting communicative research for her dissertation violates her First Amendment rights. *See* ECF 1. About a month later and before Defendants responded to Ms. Issak's Complaint, she filed a First Amended Complaint. *See* ECF 34.

The original complaint, ECF 1, included four claims: § 1983 claims against University Defendants in both their Official and Individual Capacities, and § 1983 claims against IRB Defendants

in both their Official and Individual Capacities for violating Plaintiff's First Amendment rights. Plaintiff's First Amended Complaint, ECF 34, removed the University of Tennessee-Knoxville and the University's College of Arts and Sciences as Defendants, added six Official Capacity defendants, and alleged her claim against the IRB in a separate § 1983 count. Defendants filed a motion to dismiss, and the parties have conducted limited written discovery pending the resolution of that motion. Until last week, discovery was set to continue until March 2027 and trial was anticipated in May 2027.

As the proposed Second Amended Complaint alleges, not long after Ms. Issak mentioned that she was contemplating suing the University to her then-dissertation advisor, Dr. Raja Swamy, he began demanding that she make extensive changes to her IRB application. *See* Second Amended Complaint ¶ 106. Ms. Issak believed her IRB application sufficiently addressed all of the IRB requirements and sought to submit it to the IRB so that she could begin her dissertation research. *Id.* ¶ 107. On July 1, 2025, Ms. Issak submitted her application to the IRB. *Id.* ¶ 113. Ms. Issak's revised application omitted any use of focus groups and included only 25% of the content she originally intended to research. *Id.* ¶ 115. The IRB rejected Ms. Issak's application because Dr. Swamy had not signed off on Plaintiff's proposed research. *Id.* ¶ 118.

Meanwhile, in late June 2025, after Dr. Swamy's additional demands, Plaintiff, through counsel, requested the University agree to stay the standard eight-year time-period for her to complete her PhD to ensure that the continuing delays associated with the IRB Mandate and the litigation did not threaten her ability to complete her dissertation in a timely manner. *Id.* ¶ 112. Shortly after the IRB rejected her application, the University rejected Ms. Issak's request to agree to stay the eight-year time-period for her to complete the PhD program, referring her instead to the "existing process for students" to seek an extension. *Id.* ¶ 120. That process requires a student to provide a "timeline" and "target date" for completion of the degree—something which depended entirely on the outcome of this litigation. *Id.* ¶ 121. Then, the Director of Graduate Studies must "endorse" a request for an

extension, before it is sent to the Graduate School for consideration. *Id.* Further, even if an extension was granted through the "existing process," that would require Ms. Issak to continue paying tuition. *Id.*

Accordingly, Ms. Issak expeditiously obtained new advisors and resubmitted her IRB application in October 2025. *Id.* ¶¶ 122, 126. On or about October 16, 2025, the IRB deferred Ms. Issak's IRB Application. *Id.* ¶ 127. In deferring Ms. Issak's IRB application, the IRB added two new requirements. *Id.* ¶ 128. First, the IRB directed Ms. Issak to "[l]ist the exact interview location prior to beginning any study activities. [Or, i]f the location is not yet confirmed, … acknowledge that an amendment will be required and approved by the IRB before data collection … ." *Id.* And second, the IRB required Ms. Issak to create an "Adverse Event/Unanticipated Problem (AE/UP) Monitoring Plan." *Id.*

The IRB's requirement that Ms. Issak provide "the exact interview location prior to beginning any study activities" and obtain IRB approval of the site information before data collection, rendered it impractical for Ms. Issak to complete her research because she could only arrange for a site to conduct interviews once in the UAE and it would be extremely costly and financially risky to travel to the UAE without IRB approval. *Id.* ¶ 129. Further, to avoid drawing any unnecessary attention to the domestic servants and to protect their privacy, Ms. Issak's plan had been to conduct the interviews in a variety of locations based on the preferences of the women who agreed to be interviewed. *Id.* ¶ 130.

The IRB's October 2025 rejection of her IRB Application and its decision to add new requirements for approval put the entire eight years of study and hundreds of thousands of dollars Ms. Issak invested in her PhD at risk by running her into the University's deadline for completing the doctoral program: Ms. Issak began the PhD program on or about August 2018 and thus was required to complete her PhD around August 2026. *See id.* ¶¶ 45, 131.

On December 1, 2025, through counsel, Plaintiff informed Defendants that she had tentatively decided to amend her dissertation to temporarily change her research to focus on individuals, to allow her to complete her PhD on a timely basis and thereby to mitigate her damages.[1] *Id.* ¶ 134. Plaintiff's letter explained her plan to still conduct communicative research and collect data in the UAE, but, due to the compulsion of the IRB Mandate and the limited time to complete her degree, to temporarily not "develop or contribute to generalizable knowledge." *Id.* ¶ 135. Instead, pending resolution of the litigation, Ms. Issak proposed to focus on individuals rather than a community or population. *Id.* ¶ 134. Ms. Issak sought Defendants' confirmation that she could, without advance IRB approval, collect data that would not be for "generalizable knowledge," at least until she had the Court's approval to supplement her dissertation (which she explicitly stated would be sought in a second amended complaint). *Id.* ¶¶ 134–36.

On December 10, 2025, Defendants responded circularly, noting that they "agree[d] that if Ms. Issak has modified her project in a manner that does not require IRB review, then she is free to gather information and draft her dissertation with her committee's approval." *Id.* ¶ 137. Defendants continued, however:

> If Ms. Issak intends to use any of her findings from this project in the future to contribute to generalizable knowledge, and if the project meets the definition of human subjects research in 45 C.F.R. § 46.102, she would need to undergo IRB review for secondary usage of the gathered information. UT SOPs at 9, 16–18. Should Ms. Issak reapply for IRB approval of her dissertation, Defendants will assess whether use of prior, unapproved information she gathered is permissible under applicable laws and policies.

*See id.* ¶ 138.

---

[1] When Ms. Issak filed her First Amended Complaint, she anticipated filing a motion for a preliminary injunction if the IRB Mandate threatened her ability to complete her dissertation on time. But by the time Defendants' refusal to accommodate the litigation became apparent there would be little time left for her to complete her dissertation in the event the court denied an injunction. Accordingly, Ms. Issak instead informed Defendants that she would amend her complaint to seek prospective equitable relief allowing her to amend her dissertation.

Plaintiff's Counsel immediately sought clarification concerning "whether the University agrees that Ms. Issak may gather the same information she had previously sought to collect, without IRB approval, given that her data *could* later be used to develop or contribute to generalizable knowledge." *Id.* ¶ 139. Defendants responded on December 15, 2025 by quoting from their initial response letter and then adding, "the response to your question depends on how Ms. Issak chooses to design her project. … if it is designed to contribute to generalizable knowledge, then IRB review would be required." *See id.* ¶ 140.

The ambiguity in the IRB Mandate and Defendants' response forced Ms. Issak to temporarily revise her research plan and dissertation. *Id.* ¶ 142. Specifically, Ms. Issak has temporarily refrained from speaking with domestic workers in the UAE and instead only used publicly available social media data to glean information and to write her dissertation. *Id.* In a March 31, 2026 discovery response, Ms. Issak informed Defendants that "since I am unable to conduct interviews for my dissertation due to Defendants' prior restraint, I have been conducting digital public data research … to glean the needs, vulnerabilities, rights, and motives of Ethiopian domestic workers." *Id.* ¶ 143. Such research does not fall under the IRB Mandate.

Under these circumstances, Ms. Issak completed a less robust version of her dissertation and on May 16, 2026, she graduated with a Doctor of Philosophy in the Anthro-Cultural Anthropology program. *Id.* ¶ 145. However, Ms. Issak's dissertation has not yet been made public due to a six-year embargo on the dissertation. *Id.* ¶ 146.

Defendants recently expressed an intent to file a motion to dismiss, arguing mootness and sovereign immunity based on these changed circumstances. Plaintiff, however, asserts that the First Amendment violations remain ongoing. Ms. Issak seeks leave to file her Second Amended Complaint to explain the existence and impact of the ongoing violations.

5

## ARGUMENT

Fed. R. Civ. P. 15(a)(2) provides: "[A] party may amend its pleading only with the opposing party's written consent[2] or the court's leave. The court should freely give leave when justice so requires." "'In the absence of any apparent or declared reason' for denying leave—and none appears here—'the leave sought should, as the rules require, be "freely given."'" *Lucas v. Chalk*, 785 F. App'x 288, 291 (6th Cir. 2019) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). The U.S. Supreme Court explained that "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman*, 371 U.S. at 182. Following *Foman*, the Sixth Circuit has "emphasized that the case law in this Circuit manifests liberality in allowing amendments to a complaint." *Parchman v. SLM Corp.*, 896 F.3d 728, 736 (6th Cir. 2018) (internal quotation omitted).

This case lacks any of the factors that justify denying leave to amend. Here, there is no "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Penn v. Sullivan Cnty.*, No. 2:22-CV-129-KAC-CRW, 2023 WL 11898954, at *1 (E.D. Tenn. Apr. 4, 2023) (quoting *Foman*, 371 U.S. at 182). *See also, City of Harriman v. Hester*, No. 3:22-CV-77-KAC-DCP, 2023 WL 3440244, at *1 (E.D. Tenn. May 12, 2023) (quoting *Foman* factors and granting third-party plaintiff Hester's request to amend the pleadings, even though that Motion was "somewhat delayed"); *City of Harriman v. Hester*, No. 3:22-CV-77-KAC-DCP, 2025 WL 1337534, at *1-2 (E.D. Tenn. Jan. 24, 2025) (quoting *Foman* factors and again granting Hester leave to amend).

---

[2] Defendants did not consent to the amendment.

First, amendment in this case does not create a risk of undue delay. Prior to the newest order, the Court had set a deadline of September 23, 2026 for any motion to amend the pleadings, and Plaintiff submits this motion well before that original deadline. ECF 71 at 3. Prior to the newest order, the discovery deadline was also not for nearly 6 more months. ECF 71 at 2 (setting the discovery deadline for December 2, 2026). Further, the parties jointly agreed to push out the deadlines by a mere three months to accommodate the need to conduct additional briefing, so the Defendants cannot be heard to complain of a delay. *See* ECF 74 (joint motion to revise the scheduling order); ECF 75 (adopting proposed deadlines in ECF 74, setting the new deadline to amend pleadings to December 23, 2026 and establishing March 2, 2027 as the new discovery deadline). Granting leave to amend the complaint will not create a risk of undue delay in the underlying litigation. *See United States ex rel. Griffis v. EOD Tech., Inc.*, No. 3:10-cv-204, 2024 WL 4920596, at *3 (E.D. Tenn. July 8, 2024) (holding the plaintiff had not unduly delayed seeking to amend his complaint where the motion was within the deadline set by the court and where two months of discovery remained). Additionally, amendment will not delay or disrupt the case progression as the case is still early on—Defendants have yet to answer Plaintiff's complaint, Defendants' first Motion to Dismiss remains pending,[3] and no depositions have been taken.

Second, Plaintiff's Motion is not made in bad faith or with dilatory motive. To the contrary, Plaintiff could not seek leave to amend her complaint until the facts changed, namely Ms. Issak graduated. Further, as soon as it became apparent the parties could not reach an agreement to protect Ms. Issak's investment in her PhD—such as a firm commitment to extend Ms. Issak's time to graduate or to obtain a clear answer on whether the IRB Mandate applied to a narrower research focus—

___

[3] As the parties confirmed to the Court, the proposed Second Amended Complaint will only address factual developments since Ms. Issak filed her First Amended Complaint and will not affect the issues fully briefed in Defendants' first Motion to Dismiss.

Ms. Issak informed Defendants of her intent to amend the complaint to seek new prospective relief. Additionally, once Defendants informed Plaintiff that they would be filing a second motion to dismiss based on purported mootness and sovereign immunity, Plaintiff moved expeditiously to update the complaint and file this Motion to avoid a waste of party and judicial resources. Further, Plaintiff has been acting diligently in prosecuting this case, seeking and providing discovery, and the parties were in the process of beginning to schedule depositions when Defendants indicated they would file another motion to dismiss and seek a simultaneous stay of discovery.

Third, there has not been a repeated failure to cure deficiencies by previous amendments. Plaintiff has only amended the complaint once before and there has been no ruling on any motion to dismiss. Also, the proposed amendments do not seek to cure a deficiency in the pleadings but rather, as detailed above, solely address factual developments, namely Ms. Issak's interactions with the Defendants since she filed her Amended Complaint, her intent to publish on communications she had during pilot studies, and facts related to her dissertation and graduation, and to revise the requested relief: Specifically, Ms. Issak now seeks reinstatement to the University to allow her to amend her dissertation and to discuss the research she temporarily forewent, as well as to allow her to discuss communications she had during pilot studies. *See* Second Amended Complaint ¶¶ 164, 263.

Fourth, there is no arguable claim that the proposed amendment will cause undue prejudice to the Defendants. Defendants have already consented to the related proposed extension. And, as mentioned above, Plaintiff submits this motion well before this Court's scheduling order requires. *See Hamm v. FCA US LLC*, No. 2:19-cv-169, 2020 WL 13443062, at *2 (E.D. Tenn. Dec. 15, 2020) ("When a plaintiff moves to amend its complaint within the deadline listed in the Court's scheduling order . . . such request does not in and of itself create substantial prejudice to the opposing party."(citing *L.V. v. City of Maryville*, No. 3:16-cv-508, 2017 WL 4293233, at *3 (E.D. Tenn. Sep. 27,

2017)). Moreover, no depositions have occurred, and the proposed amendment provides supplemental facts and seeks to modify the proposed injunctive relief.

Finally, the amendment will not be futile because the IRB Mandate inflicts a continuing violation of Plaintiff's First Amendment rights and the proposed Second Amended Complaint clearly seeks prospective equitable relief. Thus, as explained below, Plaintiff's case continues to fit squarely within the sovereign immunity exception of *Ex parte Young* and is not moot.

The *Ex parte Young* exception to sovereign immunity still applies to Ms. Issak's claims. "In order to qualify under *Ex parte Young*, such an action must seek prospective relief to end a continuing violation of federal law." *Carten v. Kent State Univ.*, 282 F.3d 391, 395 (6th Cir. 2002) (citing *Macdonald v. Vill. of Northport*, 164 F.3d 964, 970–72 (6th Cir. 1999)). In *Carten*, the Defendants argued they were entitled to sovereign immunity because the Plaintiff had already been expelled from the graduate program at the Kent State University's School of Library and Information, his claim for "reinstatement" was "not prospective," and his ADA claim did not present "a continuing violation of law." *Id.* at 396. The Sixth Circuit disagreed, holding the former student's claim for reinstatement was a claim for "prospective relief designed to end a continuing violation of federal law." *Id.* Accordingly, the Sixth Circuit held the student's ADA claim fell within the *Ex parte Young* exception to sovereign immunity. *Id.*

Similarly, the Sixth Circuit in *Thomson v. Harmony*, 65 F.3d 1314, 1321 (6th Cir. 1995), held that the plaintiff's First Amendment claims against several official capacity defendants within a university fell within the *Ex parte Young* exception. In that case, Dr. Thomson held a clinical fellowship at the University of Cincinnati College of Medicine, where all the defendants were employed. *Id.* at 1316. As part of his fellowship, Dr. Thomson conducted research in Dr. Harmony's laboratory, until he was expelled from the lab after a fallout with Dr. Harmony. *Id.* Dr. Thomson's fellowship concluded on June 30, 1991, *see Thomson v. Univ. of Cincinnati Coll. of Med.*, No. 96-api-02-260, 1996 WL 598534, at \*4

(Ohio Ct. App. Oct. 17, 1996), yet he filed suit against the official capacity defendants in December of 1991, and filed an amended complaint in 1993, alleging the defendants retaliated against him for comments he made to Dr. Harmony. *See Thomson*, 65 F.3d at 1317.

The district court dismissed Dr. Thomson's lawsuit, but on appeal, the Sixth Circuit reversed in part, holding his claims for equitable relief survived. *Id.* at 1321. Significantly, even though Dr. Thomson's fellowship had ended more than four years prior, the Sixth Circuit held that the exception to sovereign immunity applied because "Thomson's claims for prospective relief do not pose a threat to Ohio's coffers, and thus fall squarely under the rule of *Young.*" *Id.* Of note, the prospective relief Dr. Thomson sought—and that which the Sixth Circuit held constituted prospective relief bringing the case within the *Ex parte Young* exception—included "reinstatement and support as a researcher." *Id.*

Similarly, Ms. Issak seeks reinstatement to allow her to complete her dissertation as she always intended—with field work—and seeks minor support as a researcher, namely allowing her to then defend her dissertation before a Doctoral Committee and to publish her amended dissertation through the University system. *See* Second Amended Complaint ¶¶ 164, 263.

In sum, controlling Sixth Circuit precedent establishes the *Ex parte Young* exception to sovereign immunity applies to Ms. Issak's First Amendment claims, wherein she seeks reinstatement to the University to allow her to amend her dissertation. *See supra* at 9-10; *see also Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 459 (6th Cir. 1998) ("Of course, reinstatement to a job position clearly falls within the purview of prospective equitable relief."). The proposed Second Amended Complaint alleges the IRB Mandate continues to abridge Ms. Issak's speech, and she seeks prospective equitable relief. Specifically, the Second Amended Complaint alleges the IRB Mandate continues to violate Ms. Issak's First Amendment rights by rendering her dissertation a shell of the speech she spent eight years and hundreds of thousands of dollars to publish. *See generally* Second Amended Complaint. And

although Ms. Issak graduated with a PhD, she still seeks to publish a dissertation that includes field work—something that renders her PhD more valuable to employers and her scholarship more reputable. *Id.* ¶¶ 147–51. Thus, Ms. Issak seeks prospective equitable relief in the form of a permanent injunction (1) enjoining the IRB and Official-Capacity Defendants from enforcing the IRB Mandate; (2) ordering her reinstatement to the University to allow her to complete her field work, amend her dissertation to include an analysis of the data and information she collects to advance generalizable knowledge, and then defend that updated dissertation; and (3) publish that updated dissertation as the dissertation for her PhD. *Id.* ¶¶ 164, 263, 289, 316.

The *Ex parte Young* exception also applies for a second independent reason: the proposed Second Amended Complaint alleges the IRB Mandate violates Ms. Issak's First Amendment rights by preventing her from speaking and writing about, and/or chilling her speech relating to, conversations she had concerning domestic workers in the UAE in 2019, 2021, and 2023–2024. Specifically, the proposed Second Amended Complaint alleges Ms. Issak wants to be able to speak about three separate pilot studies she conducted in the UAE without being censored or punished by the IRB. *Id.* ¶¶ 152–59.

As the proposed Second Amended Complaint alleges, Ms. Issak wishes "to advance generalizable knowledge by discussing information she gathered from interviews with individuals in the UAE as part of pilot studies she conducted in 2019, 2021 and 2023-2024, when she was a PhD student at the University." *Id.* ¶ 152. The proposed Second Amended Complaint further alleges that but-for the IRB Mandate, Ms. Issak would speak about the information she gathered from conversations she had in the UAE in 2019, 2021, and 2023–2024, to advance generalizable knowledge. *Id.* ¶ 159. For instance, Ms. Issak would like to draft a methodology-focused paper and/or speak about her interviews with adjacent population groups. *Id.* Such communicative research would advance generalizable knowledge, including among other things, by positing that an informant or interviewee's

class position and proximity to a participant group systematically shapes what they can see and convey about a vulnerable participant population's circumstances and safety. *Id.* Here, Ms. Issak would incorporate and speak about her various interviews with employers, landlords, adjacent community members, and contrast that with what she learned from a former domestic worker who later agreed to serve as her translator. *Id.* This research would complement Ms. Issak's research interest of Ethiopian domestic workers and advance not only generalizable knowledge but also Ms. Issak's research portfolio. *Id.*

As the proposed Second Amended Complaint alleges, even though Ms. Issak has graduated from the University of Tennessee, the IRB Mandate applies to "human subjects research conducted under the auspices of The University of Tennessee, Knoxville, regardless of funding source or performance site." *Id.* ¶ 158 (quoting SOPs, Section 1.2 at 8). "Research under the auspices of the University of Tennessee, Knoxville includes research conducted at or using any property or facility of the University of Tennessee, Knoxville, conducted by or under the direction of any employee or agent of the university (including students) in connection with his or her university position or responsibilities[.]" *Id.* ¶ 64 (quoting SOPs, Section 1.8 at 18; Section 1.2 at 8).

The proposed Second Amended Complaint further alleges that because Ms. Issak interviewed individuals in the UAE while she was a PhD student, those communications remain subject to University's IRB policies and procedures. *Id.* ¶ 158, 163. And by requiring Ms. Issak to comply with the IRB Mandate prior to engaging in speech related to research she undertook under the auspices of the University, the IRB Mandate constitutes a licensing system and an unconstitutional prior restraint. *Id.* ¶ 173. Further, because noncompliance with the IRB Mandate could subject Ms. Issak to "research misconduct reporting . . . to university officials," as the Second Amended Complaint alleges, the Defendants continue to unconstitutionally chill Ms. Issak's speech. *Id.* ¶¶ 174, 186.

Moreover, the proposed Second Amended Complaint alleges that the Defendants informed Ms. Issak that should she use any of her findings "in the future to contribute to generalizable knowledge . . . she would need to undergo IRB review for secondary usage of the gathered information." Second Amended Complaint ¶ 138. Thus, the IRB Mandate continues to abridge Ms. Issak's First Amendment rights in this second way. In this regard, Ms. Issak also seeks prospective injunctive relief for these ongoing violations of her First Amendment right to free speech. Specifically, the proposed Second Amended Complaint seeks entry of a permanent injunction barring the IRB and Official-Capacity Defendants from applying the IRB Mandate to Ms. Issak's speech based on research she conducted while a PhD student. *Id.* ¶¶ 262, 288, 315.

As the above analysis establishes, under controlling Sixth Circuit precedent, Ms. Issak's claims fit squarely within the *Ex parte Young* exception to sovereign immunity. *See supra* at 9-13. Similarly, Ms. Issak's claims are not moot because this Court can grant her effectual relief by enjoining the IRB and Official-Capacity Defendants from applying the IRB Mandate to the pilot studies Ms. Issak completed while she was a student. *See Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (A suit "becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party") (citation omitted); *id.* ("As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot.") (citation omitted). Likewise, the case is not moot because this Court can order Defendants to reinstate Ms. Issak to allow her to amend her dissertation to include her intended field studies. *See id.* at 174 (rejecting the argument that a case is moot based on the Court's purported lack of authority to issue the requested relief because "the legal availability of a certain kind of relief []confuses mootness with the merits"). Because Plaintiff's proposed Second Amended Complaint presents live First Amendment claims that fall within the *Ex parte Young* exception, the requested amendment is not futile.

One final point on futility: District courts in the Sixth Circuit have discretion to "consider futility" at the Motion for Leave to Amend stage, without ruling on whether a complaint could withstand a Rule 12(b)(6) motion to dismiss. *See Washtenaw Cnty. Emp.' Ret. Sys. v. Dollar Gen. Corp.*, No. 3:23-cv-01250, 2026 WL 810035, at *6 (M.D. Tenn. Mar. 24, 2026) (explaining "although courts *may* deny a motion to amend . . . on futility grounds, many courts, for reasons of practicality, decline to engage in a futility analysis at the motion to amend phase and opt instead to assess questions of plausibility later when ruling on the motion to dismiss") (quotation and citation omitted). However, Plaintiff respectfully submits that it would be more appropriate for the Court to reach the question of whether Ms. Issak's proposed amended complaint survives a motion to dismiss. First, that is the appropriate standard. *See Stanley v. W. Michigan Univ.*, 105 F.4th 856, 867 (6th Cir. 2024) (explaining an amendment is futile if it could not survive a motion to dismiss) (cleaned up). Second, *Carten* and *Thomson* make clear that Ms. Issak's graduation does not render her claims barred by sovereign immunity. *See supra* 9-10. Third, considering the question once, rather than twice, would preserve party and judicial economy and would act to "secure the just, speedy, and inexpensive determination" of Ms. Issak's claims. Fed. R. Civ. P. 1. This point is particularly powerful given that the parties have already fully briefed Defendants' other challenges to Ms. Issak's claims. *See* ECF 40-41, 53, 55.

For the reasons stated above, Plaintiff respectfully requests this Court grant Ms. Issak's motion for leave to file her Second Amended Complaint, holding that the amendment is not futile because the claims would withstand a second Motion to Dismiss based on mootness and sovereign immunity. Should the Court grant this Motion, in the interest of efficiency and timely resolution, Plaintiff requests that the Court rule on the pending motion to dismiss on the merits rather than denying it as moot. The arguments in that motion are equally applicable to the proposed amended complaint. Plaintiff further suggests that a holding that the amendment would not be futile should preclude the need for further motion to dismiss briefing. At a minimum, the parties should confer after the Court rules on

futility and before Defendants file a motion based on the same grounds. But no matter the procedure the Court deems appropriate moving forward, leave to amend the complaint should be granted.

Respectfully submitted,                Dated: June 15, 2026

/s/ *Margot J. Cleveland*
Margot J. Cleveland (MI Bar No. 83564)*
Kaitlyn D. Schiraldi (TN Bar No. 039737)
Zhonette M. Brown (CO Bar No. 40011)*
NEW CIVIL LIBERTIES ALLIANCE
4250 N. Fairfax Drive, Suite 300
Arlington, VA 22203
(202) 869-5210
margot.cleveland@ncla.legal

*Counsel for Plaintiff Idil Issak*
* Admitted *Pro Hac Vice*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 15, 2026, I electronically served the foregoing Motion for Leave to Amend on Defendant's counsel via ECF.

/s/ *Margot J. Cleveland*
Margot J. Cleveland

**IDIL ISSAK,**

     **Plaintiff,**

**v.**

**RANDY BOYD, President of the**
**University of Tennessee**
**System, in his Official Capacity, *et al.*,**

     **Defendants.**

**No. 3:25-cv-00238-KAC-JEM**

## [PROPOSED] ORDER

Plaintiff, by and through counsel, moved this Court to enter an Order granting her leave to file a Second Amended Complaint. The Court finds that the Motion is well taken. It is ORDERED that Plaintiff is granted leave to file her Second Amended Complaint: Plaintiff's claims are not futile because they would survive a motion to dismiss. The parties shall confer concerning next steps and provide the Court with a status report within 14 days.

Entered this _____ day of _____, 2026.

_____
Judge