UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| IDIL ISSAK,<br><br>Plaintiff,<br><br>v.<br><br>RANDY BOYD, PRESIDENT OF THE UNIVERSITY OF TENNESSEE SYSTEM, in his Official Capacity; et al.;<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 3:25-CV-238-KAC-JEM |

**MEMORANDUM OPINION AND ORDER DISMISSING ACTION**

This case presents itself in an odd procedural posture. Defendants filed a Motion to Dismiss [Doc. 40] asking the Court to dismiss Plaintiff Idil Issak's claims in the First Amended Complaint [Doc. 34]. Plaintiff then moved to amend her complaint [*See* Doc. 76]. But she asks the Court to "rule on the pending motion to dismiss on the merits" after permitting her to amend her complaint because "the arguments in that motion" remain "equally applicable" [*See id.* at 14]. For the reasons below, the Court: (1) grants Plaintiff's Motion to Amend [Doc. 76] in part to the extent it seeks to supplement her pleading with factual developments but not add a party or claims, (2) grants Defendants' Motion to Dismiss [Doc. 40] as supplemented and as applied to the supplemented complaint; and (3) dismisses the action.

The supplemented complaint properly names Randy Boyd, President of the University of Tennessee System; Donde Plowman, Chancellor of the University of Tennessee-Knoxville; Marieke Van Puymbroeck, "Vice Provost and Dean of the Graduate School"; Deborah Crawford, Vice Chancellor for Research, Innovation & Economic Development; Brad Day, Interim Associate Vice Chancellor for the Responsible Conduct of Research; and Graciela S. Cabana, "Director of

Graduate Studies"; as Defendants, each in his or her official capacity. It also names "Michael Blum of the College of Arts and Sciences" and "Barbara Heath of the Department of Anthropological Archaeology" as Defendants in their individual and official capacities. Finally, it names the "Institutional Review Board ("IRB")" as a Defendant; along with Defendants Lora Beebe, Chair of the IRB; Robert Withrow, "alternate member" of the IRB and Director of the Human Research Protection Program ("HRPP"); and Tami Wyatt, "interim Institutional Official" of the IRB; each in his or her individual and official capacities.

In 2018, Plaintiff "enrolled in the graduate program at the University of Tennessee-Knoxville" (the "University") "to obtain a PhD in anthropology" [*See* Doc. 76-1 at 2]. She intended to conduct "communicative field research" focused on "the human rights abuses suffered by Ethiopian domestic workers in the United Arab Emirates" [*Id.*]. In November 2023, the "Doctoral Committee approved [Plaintiff's] proposed dissertation" [*Id.* at 3].

Before she could begin her communicative field research under the auspices of the University, the University required Plaintiff to "obtain IRB approval" [*Id.*]. This requirement generally applies to all "social science researchers who seek to engage in research that involves communications with third parties" "if the research seeks to contribute to generalizable knowledge" [*Id.*]. The IRB "has jurisdiction over all human subjects research conducted under the auspices of" the University [*See* Doc. 41-3 at 8 (IRB Standard Operating Procedures ("SOPs"))].[1] "No research involving human subjects may be conducted without IRB approval and no research may commence until all required Institutional approvals (Including IRB) are obtained" [*Id.*]. And it "makes independent determinations whether to approve, require

[1] The Court properly considers the IRB's SOPs for all relevant purposes. *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

modification in, or disapprove research based upon whether human subjects are adequately protected" [*Id.* at 22].

Organizationally, the IRB falls within the University's larger HRPP, which is designed to "facilitat[e] compliance with federal regulations, state and local law and organizational policies" [*Id.* at 16, 20]. "The ultimate responsibility of the HRPP resides with the Institutional Official (IO)" [*Id.* at 20]. "The IO is legally authorized to represent the University," "is the signatory of the" University's "Federal-wide Assurance," and "is a faculty member" at the University [*Id.*]. The IO is also "responsible for ensuring that the university HRPP and IRB have the resources and support necessary to fulfill their responsibilities and comply with the regulations and requirements that govern human research" [*Id.*]. The IO "oversee[s] the" IRB, and "appoint[s] [its] members" [*Id.*]. And the IO "provides training and educational opportunities for IRB members" [*Id.*].

The University funds the IRB and "payment" for any "unexpected expense" incurred by the IRB "would come from" the University [*See* Doc. 41-7 at 1-2 (Declaration of Deborah Crawford ("D. Crawford Decl."))]. The University may "review any human subjects research protocol and has the right to disapprove or terminate approval of a research protocol that has been approved by the IRB" [*See* Doc. 41-3 at 8-9]. It may not, however, "approve" any research "that has not been approved by the IRB" [*Id.* at 9]. The IRB "functions independently of, but in coordination with, other organizational committees and officials" within the University [*Id.* at 22]. And the University sets specific requirements for IRB membership [*Id.* at 52-53]. For example, the IRB must have "at least five members" and "at least one member" must not be "otherwise affiliated with the organization" or the "immediate family" member "of a person who is affiliated with the organization" [*Id.* at 53].

In February 2024, Plaintiff "first sought approval from the IRB to complete her field research" [*See* Doc. 76-1 at 3]. The IRB "repeatedly rejected [Plaintiff's] application for nearly two years" [*Id.*].

In June 2025, Plaintiff filed the instant lawsuit [*See* Doc. 1]. In August 2025, after meeting and conferring with then-Defendants, Plaintiff filed the First Amended Complaint [Doc. 34] to, among other things, remove the University of Tennessee as a defendant [*See* Docs. 1 at 1; 34 at 1]. She brought various First Amendment claims against then-Defendants and sought declaratory and injunctive relief, designed to prevent IRB review of her dissertation, and nominal damages [*See* Doc. 40 at 1-2; *see generally* Doc. 34]. Then-Defendants moved to dismiss the First Amended Complaint for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Rule 12(b)(6) [*See* Doc. 40 at 2]. They argued that (1) the IRB was an arm of the state and therefore shielded by sovereign immunity, (2) the individual-capacity Defendants are shielded by qualified immunity, and (3) Plaintiff failed to adequately plead a First Amendment injury [*Id.*].

Then, things changed significantly. In October 2025, the IRB "rejected" Plaintiff's final IRB application—allegedly "add[ing] new, arbitrary, and unnecessary requirements for" Plaintiff "to obtain IRB approval, including a requirement that would have rendered her ability to conduct her field research in time to complete her PhD program a practical impossibility" [*See* Doc. 76-1 at 3]. So, Plaintiff "abandoned" her desired dissertation and "wr[ote] an interim dissertation, which differs significantly from" her desired publication [*Id.*]. Plaintiff "successfully defended [her] modified dissertation" and "received her Doctor of Philosophy on May 16, 2026 in the Anthro-Cultural Anthropology program" [*Id.*]. She is no longer "enrolled as a student" at the University

[*See* Doc. 79-1 at 1 (Declaration of Anna-Marie Van Puymbroeck Chancellor ("A. Van Puymbroeck Decl."))].

Accordingly, she "is no longer subject to" the University's "IRB requirements, including its" SOPs, and she "may use the research [she] conducted while a student at" the University "without risk of" University "imposed sanctions" [*See* Doc. 79-2 at 1 (Declaration of Rob Withrow ("R. Withrow Decl."))]. This is because the University "views students' dissertations as the beginning of their research career and, after graduation, expects that they will expand on the dissertation research with independent publishers" [*See* Doc. 79-1 at 2 (A. Van Puymbroeck Decl.)]. Regardless, now that Plaintiff has completed the "requirements" to graduate and the University has "awarded" her a doctoral degree, she is "ineligible for future enrollment in the same degree program" [*Id.* at 1]. The University does not allow a student to "substantively amend" or "materially alter a dissertation after graduation" [*Id.* at 1-2].

In June 2026, Plaintiff moved to "amend" the First Amended Complaint to (1) "reflect [the] recent factual developments," including her graduation, and (2) modify her "requested relief" [*See* Doc. 76 at 1].[2] That modified relief request expands to (1) preventing "the IRB, the

[2] No Party identified another significant difference between the First Amended Complaint and the proposed Second Amended Complaint: the proposed addition of "Gina Owens of the College of Arts and Sciences" in her official capacity as a defendant and the addition of claims against her [*See* Doc. 76-1 at 1, 7 (alleging that Gina Owens "upon information and belief, is responsible for maintaining an environment that enables research, which involves implementing the IRB Mandate")]. No Party addresses why "justice" "requires" Owens to be added as a defendant at this late juncture. *See* Fed. R. Civ. P. 15(a)(2). And to the extent necessary, no Party addresses whether the "terms" are "just." *See* Fed. R. Civ. P. 21. Adding a new party is not a "transaction, occurrence, or event that happened after the date of the pleading" under Rule 15(d). *See id.* R. 15(d). Accordingly, to the extent Plaintiff intends to add Owens in her official capacity as a new party in this action and add claims against her, the Court denies the request. Patrick Grzanka presents a different issue. He was named as a defendant in the First Amended Complaint [*See* Doc. 34]. But he is not identified as a defendant in the proposed Second Amended Complaint [*See* Doc. 76-1]. Dropping him as a Party in this action would be beneficial to him; he has not objected, nor has any other Party; and the Court can see no reason why dropping him from this action would

University Official-Capacity Defendants, and the IRB Official-Capacity Defendants from applying the IRB Mandate to" Plaintiff's "research to prevent her from speaking about information she gathered under the auspices of the University or from publishing a field research-based dissertation" and (2) "requiring the University Official-Capacity Defendants to readmit" Plaintiff "to the University for up to two years and allow her to complete her field work, revise her dissertation, defend that revised dissertation, and publish the revised dissertation as" Plaintiff's "dissertation for her PhD" [*See* Doc. 76-1 at 58]. The proposed Second Amended Complaint is not verified [*See* Doc. 76-1].

Under Federal Rule of Civil Procedure 15, this request, to the extent it is appropriate, is most accurately characterized as a motion to supplement. *See* Fed. R. Civ. P. 15(d) ("[T]he court may, on just terms, permit a" "supplemental pleading [to] set[] out any transaction, occurrence, or event that happened after" the initial "pleading."). So, the Court construes the request [Doc. 76], to the extent appropriate, as a request to supplement under Rule 15(d). *See* 6A M. Kanem & H. Erichson, Federal Practice and Procedure § 1504 (3d ed. 2026) (explaining that the Court may "consider[]" a mislabeled motion to "supplement under the proper portion of Rule 15"). To the extent Plaintiff seeks to add facts to her complaint that materially impacts the Court's sovereign immunity analysis, the Court in its "sound discretion" grants the Motion [Doc. 76] under Rule 15(d). *See Clark v. Chapman*, No. 21-1652, 2022 WL 19833097, at *5 (6th Cir. Nov. 22, 2022).

Plaintiff asks the Court to adjudicate Defendants' "pending motion to dismiss on the merits" after permitting her to supplement her complaint because "the arguments in that motion" remain "equally applicable" to the supplemented complaint [*See* Doc. 76 at 14]. Defendants

---

not be just. *See* Fed. R. Civ. P. 21; E.D. Tenn. L.R. 7.2. So, the Court drops Patrick Grzanka from the action.

appear to agree, provided that the Court considers the arguments they raised in opposition to the motion to amend that would be applicable to the now-supplemented complaint [*See* Doc. 79]. And the Court agrees that this is an appropriate exercise of its discretion and will help "secure the just, speedy, and inexpensive determination" of this action. *See* Fed. R. Civ. P. 1. Accordingly, the Court "appl[ies]" the "pending motion to dismiss" to Plaintiff's supplemented complaint [Doc. 76-1]. *See Crawford v. Tilley*, 15 F.4th 752, 759 (6th Cir. 2021); 6 M. Kanem & H. Erichson, Federal Practice and Procedure § 1476 (3d ed. 2026); *see also Gov't Emps. Ins. Co. v. Mount Prospect Chiropractic Ctr., P.A.*, 98 F.4th 463, 472 (3d Cir. 2024). And the Court considers the arguments Defendants raised in opposition to the motion to amend that relate to the supplemental facts, [*see* Doc. 79], to which Plaintiff has responded, [*see* Doc. 85].

The Court must "ensure" that it has "subject matter jurisdiction before resolving" the "merits" of a claim. *See Pichiorri v. Burghes*, 162 F.4th 745, 752 (6th Cir. 2025). The United States Court of Appeals for the Sixth Circuit "treat[s] sovereign immunity as a limit on" the Court's "jurisdiction." *Id.* Where, as here, an entity "invokes immunity," the Court should generally "decide[]" immunity "before the merits." *Id.* (quoting *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015)); *Nair v. Oakland Cnty. Cmty. Mental Health Auth.*, 443 F.3d 469, 475 (6th Cir. 2006) (collecting cases). An "entity asserting Eleventh Amendment immunity has the burden to show" that it is immune. *Nair*, 443 F.3d 469, 476.

Here, the IRB and official-capacity Defendants are entitled to sovereign immunity. "Challenges to subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) come in two varieties: a facial attack or a factual attack." *See Wayside Church v. Van Buren Cnty.*, 847 F.3d 812, 816 (6th Cir. 2017) (*overruled on other grounds by Freed v. Thomas*, 81 F.4th 655 (6th Cir. 2023)). Where, as here, defendants levy a factual attack, the Court "may consider factual

matters outside the pleadings and resolve factual disputes." *See Anestis v. United States*, 749 F.3d 520, 524 (6th Cir. 2014); *see also Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

"States are generally entitled to immunity" from suit "without their consent." *See Galette v. New Jersey Transit Corp.*, 607 U.S. 509, 515 (2026). But "sovereign immunity is personal to the State" and extends "only to arms of the State" and "not legally independent" State-created "entities." *Id.* "Whether an entity is an arm of the state is a question of federal law" that depends on "the provisions of state law that define the agency's character." *Id.* at 519 (cleaned up) (quoting *Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429, n. 5 (1997)).

To determine whether an entity is an arm of the state, the Supreme Court has considered: "(1) the State's potential liability for a judgment against the entity; (2) the language by which state statutes and state courts refer to the entity and the degree of state control and veto power over the entity's actions; (3) whether state or local officials appoint the board members of the entity; and (4) whether the entity's functions fall within the traditional purview of state or local government." *See Ernst v. Rising*, 427 F.3d 351, 359 (6th Cir. 2005) (compiling factors from and citing *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 44, 45, 51 (1994)). The Sixth Circuit, for its part, has considered: "(1) whether the state would be responsible for a judgment against the entity in question; (2) how state law defines the entity; (3) what degree of control the state maintains over the entity; and (4) the source of the entity's funding." *Id.* (quoting *S.J. v. Hamilton Cnty.*, 374 F.3d 416, 420 (6th Cir. 2004)) (citing *Hall v. Med. Coll. of Ohio,* 742 F.2d 299, 302 (6th Cir.1984)). No factor is dispositive. *See Kreipke v. Wayne State Univ.*, 807 F.3d 768, 778 (6th Cir. 2015). The Court "weigh[s] and balance[s]" each factor "based on the unique circumstances of the

case." *See id.* But the Court gives "special weight" to whether the State is potentially liable for a judgment against the entity. *See id.*; *see also Galette*, 607 U.S. at 526.

Here, after findings facts and weighing the relevant factors, the Court concludes that the IRB is an arm of the State of Tennessee. *See Ernst*, 427 F.3d at 359. To start, "[t]he University of Tennessee, as an arm of the State of Tennessee, is immune to suit in federal court under the doctrine of sovereign immunity." *See Boinapally v. Univ. of Tennessee*, 23 F. App'x 512, 515 (6th Cir. 2001). And the IRB is funded by the University [*See* Doc. 41-7 at 1-2 (D. Crawford Decl.)]. That is, the IRB "is not a self-funding entity" [*See id.* at 1]. The University "uses its own funds, obtained through the State and sponsored projects to pay compensation and salaries to IRB staff and to pay all other expenses necessary to operate the IRB" [*Id.* at 2]. "If the IRB were to have an unexpected expense," like a judgment, the University would pay for that expense [*See id.*]. And the University, through the IO, is "responsible for ensuring that the" "IRB ha[s] the resources and support necessary to fulfill [its] responsibilities and comply with the regulations and requirements that govern human research" [*See* Doc. 41-3 at 20 (SOPs)]. There is no evidence that the State of Tennessee structured the IRB "as a legally separate entity" or that the IRB holds "traditional corporate powers to sue and be sued, hold property, make contracts, and incur debt." *See Galette*, 607 U.S. at 524. And Plaintiff has not argued that it does. So, the most important factor—the State's potential liability for a judgment against the entity—weights in favor of immunity.[3] *See Kreipke*, 807 F.3d at 778; *Ernst*, 427 F.3d at 359; *Galette*, 607 U.S. at 524-27. As does the source of the IRB's funding. *See Ernst*, 427 F.3d at 359.

---

[3] In the "Opposition To Motion To Dismiss" [Doc. 53], Plaintiff indicated that at that time, she needed additional jurisdictional discovery specifically regarding "whether Tennessee has ever paid out a judgment on behalf of the IRB" [*See* Doc. 53 at 14]. But whether Tennessee has ever actually paid a judgment on behalf of the IRB is beside the point. *See Ernst*, 427 F.3d at 359 (explaining that the Supreme Court and the Sixth Circuit look to "potential" liability). Plaintiff also believed

***Second***, the University, through the IO, "oversee[s] the" IRB, and "appoint[s] [its] members" [*See* Doc. 41-3 at 20 (SOPs)]. And the IO is the individual within the University who ultimately is responsible for the University's "compliance with federal regulations, state and local law and organizational policies" [*Id.* at 16, 20]. The IO is also "legally authorized to represent the University" and "is the signatory of the" University's "Federal-wide Assurance" [*Id.*]. The University, moreover, sets requirements for the composition of the IRB and qualifications of its members [*Id.* at 52-53]. So, the University's appointment of IRB members weights in favor of immunity. *See Ernst*, 427 F.3d at 359.

***Third***, the function of the IRB also weighs in favor of immunity. "[H]igher education is a function within the traditional purview of state government." *See Kreipke*, 807 F.3d at 779. And research is a function of both higher education and the University of Tennessee. Within the University, the IRB "has jurisdiction over all human subjects research conducted under the auspices of" the University [*See* Doc. 41-3 at 8 (SOPs)]. In fact, "[n]o research involving human subjects may be conducted without IRB approval and no research may commence until all required Institutional approvals (Including IRB) are obtained" [*Id.*]. True, the IRB makes "independent determinations whether to approve, require modification in, or disapprove research based upon whether human subjects are adequately protected" [*Id.* at 22]. But where, as here, "independence [i]s necessary to further the state's goal" in higher education, independence is "consistent with," not inapposite to, an entity's "status as a state educational institution." *See Kreipke*, 807 F.3d at

---

that she "lacks the ability to probe the assertion and understand what it means to say the IRB is 'state-funded' and a 'subsidiary'" [*See* Doc. 53 at 14]. For a year, she has been free to "probe" the issue in discovery. The Court initially set a July 31, 2026 discovery deadline [*See* Doc. 46 at 1-2]. But at the Parties' request, the Court extended the deadline to December 12 [*See* Doc. 71 at 2]. Plaintiff has not supplemented her brief. And she has not endeavored to explain why she could not and did not engage in her desired discovery over the past year. So, the Court denies her request.

778 (explaining that "independence must be maintained in educational matters in order to provide the highest quality education for students" and "maintain the outstanding national reputation of the University"). This is especially true when an entity "functions independently of, but in coordination with, other organizational committees and officials" within the University [*See* Doc. 41-3 at 22 (SOPs)]. So, this factor also weighs in favor of immunity. *See Ernst*, 427 F.3d at 359.

***Fourth***, University control over the IRB supports immunity too. Under University rules, "[n]o research involving human subjects may be conducted without IRB approval," [*see* Doc. 43-1 at 8 (SOPs)], but the University retains the right to review research protocol and ultimately "disapprove or terminate approval of a research protocol that has been approved by the IRB," [*see id.* at 8-9]. So, the University retains a veto and ultimate authority over who may conduct research and the type of research he or she may conduct under the auspices of the University while in a University program.

Weighing the relevant factors, the IRB is an arm of the State of Tennessee entitled to sovereign immunity. *See Ernst*, 427 F.3d at 359; *Kreipke*, 807 F.3d at 778; *Galette*, 607 U.S. at 524-27. And it is entitled to dismissal of the claims against it without prejudice. *See Ernst*, 427 F.3d at 367; *see also Sykes v. United States*, No. 1:10-CV-688, 2011 WL 3739017, at *16 (S.D. Ohio July 22, 2011) (concluding that the University of Cincinnati institutional review board is an arm of the State because "it is an agent under the control of UC"), *report and recommendation adopted,* No. 1:10-CV-688, 2011 WL 3739306 (S.D. Ohio Aug. 24, 2011), *aff'd,* 507 F. App'x 455 (6th Cir. 2012); *see also Thomson v. Harmony*, 65 F.3d 1314, 1319 (6th Cir. 1995) (concluding that "an agent of" a "university" "is entitled to its immunity from suit in federal court").

This has downstream consequences for the Defendants sued in their official capacity. With limited exceptions, "claim[s] against a state" "official in their official capacity" for damages are

"barred by sovereign immunity." *See Galette*, 607 U.S. at 527 (citing *Lewis v. Clarke*, 581 U.S. 155, 162 (2017)). This immunity, if applicable, extends to Section 1983 claims. *See Pichiorri*, 162 F.4th at 752 (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 63-71 (1989)). But "federal courts may issue injunctions that prohibit state officials sued in their official capacities from taking actions that violate federal law." *Id.*; *see also Doe v. Cummins*, 662 F. App'x 437, 444 (6th Cir. 2016) (noting that in limited circumstances, the Court may issue declaratory retrospective relief if it is "ancillary to a prospective injunction designed to remedy a continuing violation of federal law"). To "issue a prospective injunction against a state officer," however, there must be "a continuing violation of federal law." *See Charlton-Perkins v. Univ. of Cincinnati*, 185 F.4th 626, 638 (6th Cir. 2026).

Here, there is no continuing violation of federal law with respect to Plaintiff. The supplemented complaint, in Plaintiff's words, "alleges the same [allegedly] continuing violation of her First Amendment rights flowing from Defendants' [allegedly] unconstitutional IRB Mandate" [*See* Doc. 85 at 1]. But things have changed. Plaintiff is no longer a student at the University [*See* Doc. 79-1 at 1 (A. Van Puymbroeck Decl.)]. She has "received her Doctor of Philosophy" degree "in the Anthro-Cultural Anthropology program" [*See* Doc. 76-1 at 3]. And she is not eligible "for future enrollment in the same degree program" [*See* Doc. 79-1 at 1 (A. Van Puymbroeck Decl.)]. Factually, she "is no longer subject to" the University's "IRB requirements, including its" SOPs, and she "may use the research [she] conducted while a student at" the University, including speaking about that research, "without risk of" University "imposed sanctions" [*See* Doc. 79-2 at 1 (R. Withrow Decl.)].[4] Because Plaintiff is no longer subject to the

[4] The University's "deliberate, clear, and unambiguous" factual representations regarding the application of the IRB Mandate to Plaintiff in the future qualify as binding "judicial admissions."

allegedly-unconstitutional IRB Mandate, there is no "continuing violation of federal law" as to Plaintiff. *See Charlton-Perkins*, 185 F.4th at 638; *see also Fialka-Feldman v. Oakland Univ. Bd. of Trs.*, 639 F.3d 711, 713-17 (6th Cir. 2011); *DeFunis v. Odegaard*, 416 U.S. 312, 316-17 (1974). So, the Defendants sued in their official capacity are entitled to dismissal of the official-capacity claims against them without prejudice. *See Ernst*, 427 F.3d at 367.

That leaves those Defendants sued in their individual capacity. Qualified immunity shields them from liability for individual-capacity claims. To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *See Phillips v. DeWine*, 841 F.3d 405, 414 (6th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Teamsters Local 237 Welfare Fund v. ServiceMaster Glob. Holdings, Inc.*, 83 F.4th 514, 524 (6th Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Qualified immunity shields "government officials" performing "discretionary functions" from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *See, e.g.*, *id.* at 760. "There are two steps" to the "qualified-immunity inquiry." *Id.* at 762. ***First***, the Court "determine[s] whether the facts alleged make out a violation of a constitutional right." *See id.* (quotation omitted). ***Second***, the Court determines whether "the right at issue was clearly established" such that "a reasonable officer would have known that his conduct violated

---

*See MacDonald v. Gen. Motors Corp.*, 110 F.3d 337, 340 (6th Cir. 1997); *United States v. Burns*, 109 F. App'x 52, 58 (6th Cir. 2004).

it." *Id.* at 762-63. The Court may address "these questions in any order." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). There is no "special rule or presumption against granting motions to dismiss" based on "qualified immunity." *See Crawford*, 15 F.4th at 763. This is especially true, where, as here, "the validity" of a qualified immunity defense is "apparent from the face of the" relevant pleading. *Id.* (citing *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 762 (6th Cir. 2020)).

The Court considers the law at the time of the challenged conduct. *See id.* at 760 (citing *Dist. of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)). "[E]xisting precedent" at that time "must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (per curiam) (quotation omitted). "That's a tough standard." *See Ashford v. Raby*, 951 F.3d 798, 801 (6th Cir. 2020). Once an individual raises a qualified immunity defense, "a plaintiff bears the burden of overcoming" that standard. *See Crawford*, 15 F.4th at 760.

Here, Plaintiff offers no case demonstrating that "the right at issue"—a First Amendment right to conduct specific research in a PhD program under the auspices of a State university without prior approval—"was clearly established" at the relevant time. *See id.* at 762-63. Plaintiff only "identif[ies]" First Amendment rights "at a high level of generality," *see Pearson v. Michigan Dep't of Corr.*, 170 F.4th 1027, 1036 (6th Cir. 2026), [*See* Docs. 53 at 38-39-42; 76-1 at 31-37]. She identifies no precedent "particularized to the facts of [her] case." *See Vanderhoef v. Dixon*, 938 F.3d 271, 278 (6th Cir. 2019) (cleaned up); *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011) (A "general proposition" is "of little help in determining whether the violative nature of particular conduct is clearly established"). Simply put, Plaintiff has not met qualified immunity's "tough standard." *See Ashford*, 951 F.3d at 801.

Evan after scouring the case law, the Court only identified two unpublished district court cases within the Sixth Circuit pertaining to a constitutional challenge against an institutional review board. Neither helps Plaintiff's cause. *See Sykes*, 2011 WL 3739017, at *16 (concluding that the University of Cincinnati institutional review board is an arm of the State because "it is an agent under the control of UC"), *report and recommendation adopted,* 2011 WL 3739306, *aff'd,* 507 F. App'x 455; *Sallaj v. Middle Tenn. State Univ.*, No. 3:25-CV-00607, 2026 WL 839122, at *11 (M.D. Tenn. Mar. 26, 2026) (concluding that a student has no "First Amendment right to have MTSU publish his thesis"). And neither would be enough legally to show that the right Plaintiff asserts was "clearly established" at the relevant time. *See Campbell v. Riahi*, 109 F.4th 854, 860 (6th Cir. 2024) ("[E]xcept in an 'obvious' case, the plaintiff must point to pre-existing Supreme Court or Sixth Circuit precedent." (citations omitted)). Under this paradigm, Plaintiff has not shown that "the right at issue was clearly established." *See Crawford*, 15 F.4th at 762-63. So, the individual-capacity Defendants are entitled to qualified immunity. And the Court dismisses the individual-capacity claims against them with prejudice. *See Chaney-Snell v. Young*, 98 F.4th 699, 710-11 (6th Cir. 2024).

For the reasons above, the Court: (1) grants Plaintiff's Motion to Amend [Doc. 76] in part to the extent it seeks to supplement her pleading with factual developments but not add a party or claims, (2) grants Defendants' Motion to Dismiss [Doc. 40] as supplemented and as applied to the supplemented complaint; and (3) dismisses the action. An appropriate judgment shall enter.

SO ORDERED.

KATHERINE A. CRYTZER
United States District Judge